IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PRESTON STRAUB, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 6401 |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| JEWEL FOOD STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Preston Straub originally sued Jewel Food Stores, Inc. under the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 623 ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3, and 42 U.S.C. § 1981 ("Section 1981") alleging claims of age discrimination, color discrimination, failure to promote, sexual harassment, and retaliation. (Dkt. 1). Jewel moved to dismiss all counts except age discrimination for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). (Dkt. 17). The Court granted the Motion, dismissing all but the age discrimination claim and granting Straub leave to amend his retaliation claim and to amend his color discrimination claim to state a claim of racial discrimination. (Dkt. 33 at 8).

In his Amended Complaint, Straub alleges a claim for age discrimination in violation of the ADEA and an amended claim for retaliation under Title VII. (Dkt. 38 at 3–4). Jewel again seeks dismissal of the amended retaliation claim for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 39). The Court dismisses the re-alleged retaliation claim with prejudice. This decision does not affect the ADEA age discrimination claim from the original complaint, which still stands before the Court.

## BACKGROUND

The following facts are based on the allegations in the Amended Complaint as well as the documents attached to the Amended Complaint. (Dkt. 38); *see also Tierney v. Vahle*, 304 F.3d 734, 738–39 (7th Cir. 2002) (documents attached to the complaint "indisputably [become] a part of it for all purposes") (citing Fed. R. Civ. P. 10(c)). The court accepts all well-pleaded facts in the Amended Complaint as true for purposes of the Motion to Dismiss and draws all inferences in favor of Plaintiff. *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010).

Straub worked at a Jewel location in Downers Grove, Illinois from 2001 until his termination in December 2016. (Dkt. 38 at 8, Ex. B). In 2010, while a Jewel employee, Straub filed an EEOC charge. (*Id.* at 8). In what the Court assumes to be incidents connected with this 2010 EEOC charge,[1] Straub communicated with the Illinois Department of Labor, the Illinois Department of Human Rights and Jewel regarding a potential violation of the Personnel Records Review Act in 2010. (*Id.* at Exs. B, C, E, F, G). Straub claims that in June 2011, he was demoted from his position in the Produce Department to "a beginner's job" in response to this 2010 EEOC charge. (*Id.* at 9). Straub also claims that he was given a woman's vest at some unspecified time after 2010 in retaliation for his 2010 EEOC charge. (*Id.* at 10)

Straub remained in the "beginner's job" until around 2015. In 2015, a new store director, Rose, moved Straub out of the "beginner's job" and into the Dairy Department where he excelled. (*Id.* at 9). However, in December 2015, Straub was demoted again to

---

[1] Straub does not provide a copy of the 2010 EEOC charge. However, he attaches as exhibits to the Amended Complaint documents sent to and received from various regulatory agencies in 2010. The Court assumes that these documents' relevance to the Amended Complaint hinges on their relation to the 2010 EEOC charge, as there is no other evident connection and no clarification offered in the Amended Complaint.

2

a "beginner's job" of "Facer." (*Id.*). He alleges that he was demoted in December of 2015 in an effort to induce him into quitting. (*Id* at 10). He believes this demotion was in retaliation for a 2015 report he submitted to Jewel alleging mistreatment by a "new store director," Jim. (*Id.* at 9, Ex. H).

Straub alleges other misconduct by the new store manager Jim, including that Jim "continually requested [him] to work faster and harder . . . [to] match [the output] of the much younger employees." (*Id.* at 9). Ashley (presumably, another Jewel employee) also requested Straub to work faster and denied him his proper break time. (*Id.* at 9). At some unspecified time, Jim also threatened to transfer Straub to the bagger position even though, according to Straub, Jim was aware from Straub's 2010 EEOC charge that Straub's religious beliefs prevented him from bagging alcohol. (*Id.* at 9–10).

In 2016, Straub complained to corporate about "a concerted effort by management to harass and demean [him] in hopes that he would quit." (*Id.* at 10). The corporate office replied (*see id.* at Ex. J) but, according to Straub, "did nothing." (*Id.* at 10). In November of 2016, while shopping at the Jewel store, a store director "confront[ed] and corrall[ed] [Straub] as a shopper," detained and instructed Straub as to how to interact with store personnel while shopping and, informed Straub that he did not have to shop at the store and ultimately that he did not have to work at the store either. (*Id.* at 11, Ex. K). Straub requested video records after his termination (*see id.*) and it is unclear from the facts alleged whether he received those records.

On a general level, Straub asserts that he conducted "protected behavior" and "constantly requested the Union to get involved with issues" between 2010 and his termination. (*Id.* at 10). He claims also that he was subject to continuous harassment from

3

other employees as a "direct result of the company's attitude toward [him] and [Jewel's] demeaning treatment." (*Id.*) Ultimately, Straub states that "all of the above is . . . due to [his] age and past protected conduct and is retaliation from and through [his] 2010 matters" (*id.*), with his termination being the "climax" of the retaliation. (Dkt. 51 at 2).

On June 1, 2017 Straub filed an EEOC charge claiming discrimination based on race and age and claiming retaliation. (*Id.* at 8). Specifically with regard to the Title VII retaliation claim, the 2017 EEOC charge states that subsequent to his 2010 EEOC charge, Straub "was subjected to harassment and different terms and conditions, including, but not limited to, a change of assignment" and more generally that he was retaliated against "for engaging in protected activity, in violation of title VII." (*Id.*). The EEOC issued a right-to-sue letter on June 2, 2017 (*id.* at 8) and Straub timely filed this suit on September 5, 2017. (Dkt. 1).

## **LEGAL STANDARD**

To survive a motion to dismiss, a complaint "must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). These allegations must also "plausibly suggest that the plaintiff has a right to relief, raising the possibility above 'a speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In other words, the complaint must "state a claim to relief that is plausible on its face," *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Twombly*, 550 U.S. at 570), meaning it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.* (quoting *Ashcroft v.*

4

*Iqbal*, 556 U.S. 662, 678 (2009)). At the pleading stage, the Court takes the facts as alleged in the complaint as true; legal conclusions, however, do not receive the same deference. *Id.* (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir.2012)). Merely alleging legal conclusions will not protect the complaint from being dismissed under Rule 12(b)(6). *Id.* Additionally, the Court must "construe [the] *pro se* complaint[] liberally and hold [it] to a less stringent standard than formal pleadings drafted by lawyers." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

### DISCUSSION

Straub's Amended Complaint realleges a claim of retaliation under Title VII and age discrimination. (*See* Dkts. 1, 38). Jewel only moves to dismiss the amended retaliation claim. Straub must "set out factual allegations to show: (1) he is a member of a protected class, (2) he was subjected to an adverse employment act, and (3) there is a [causal] link between those two." *See Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 201–02 (7th Cir.2013); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (to plead a retaliation claim under Title VII, plaintiff must "allege that []he engaged in statutorily protected activity and was subjected to an adverse employment action as a result") (internal quotation omitted). Additionally, "[t]he protected activity must be specifically identified." *Id.* (citing *Concentra*, 496 F.3d at 781).

In its prior Order, the Court found that Straub asserted two retaliation claims under Title VII, each based on separate protected activity: 1) his complaints to the Union, Management and Corporate Office about harassment in the workplace; and 2) the filing of a 2010 EEOC charge. (Dkt. 33 at 6–7).[2] The Court dismissed the first for failure to exhaust

---

[2] Although Straub has checked only the ADEA as the statuary basis for his employment discrimination claims in ¶ 9 of the form complaint, the Court construes the *pro se* pleading liberally as it must and reads the

5

his allegation in his 2017 EEOC charge and the second for failing to establish a causal relationship between his filing of the 2010 EEOC charge and any adverse employment action by Jewel. (Dkt. 33 at 7). Straub attempts to cure these deficiencies in his Amended Complaint.

I.    **Exhaustion of Administrative Remedies**

A plaintiff cannot pursue a Title VII claim without first presenting that claim to the EEOC. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000) (citing *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)); *see also* 42 U.S.C. § 2000e-5. This rule serves the "dual purpose of affording the EEOC and the employer an opportunity to settle the dispute . . . and of giving the employe[r] some warning of the conduct about which the employee is aggrieved." *Cheek*, 31 F.3d at 500. There is an exception to this general rule, however, in that a plaintiff may pursue a claim not asserted in the EEOC charge if that claim is "'like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations.'" *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.1976)). To be "reasonably related," the claim and EEOC charge "must, at a minimum, describe the same conduct and implicate the same individuals." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2015) (citing *Moore*, 641 F.3d at 257)).

---

Amended Complaint to allege an amended version of his original retaliation claim under Title VII and *not* a retaliation claim under the ADEA. The facts alleged in ¶ 13 of the Amended Complaint and 2017 EEOC Charge support this reading, as do the parties' briefs on the Motion to Dismiss. This reading is also consistent with the Court's direction in its prior Order, permitting Straub to amend his pleading *only* to re-allege the Title VII retaliation claim and the color discrimination claim, not to add a new theory of retaliation under the ADEA. (*See* Dkt. 33).

In his Amended Complaint, Straub alleges Jewel retaliated against him in response to (1) his 2010 EEOC charge, (2) a 2015 report of manager misconduct, and (3) additional 2016 complaints of manager misconduct submitted to Jewel. (Dkt. 38 at 10–11). However, the corresponding 2017 EEOC charge lists only the 2010 EEOC charge and unspecified "protected activity" as reasons for Jewel's alleged retaliation against Straub. (*Id.* at 9). There is no mention whatsoever of Straub reporting any manager misconduct to the company in 2015 or 2016. (*See id.*). Therefore, while Straub clearly exhausted his allegation as to the 2010 EEOC charge (as the Court already found in its prior Order), the question remains whether he has also exhausted his allegations as to the newly alleged 2015 and 2016 complaints of manager misconduct by listing unspecified "protected activity" in the 2017 EEOC charge.

Straub's mention of "protected activity" (*see* Dkt. 38 at 8) in his 2017 EEOC charge fails to identify any particular conduct or individuals related to the protected activity. Such a general statement would not lead an EEOC investigation to discover the 2015 and 2016 internal complaints referenced in his Amended Complaint. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (An EEOC charge cannot be too "brief and general" if a complaint is to grow out of it—"an open ended charge [cannot] support any claim[] that . . . falls within its range."). In fact, the 2017 EEOC charge fails to mention internal complaints of any kind, (*see e.g.,* Dkt. 33 at 7 (dismissing retaliation claim based on complaints to the union, management, or Jewel's corporate office because the 2017 EEOC charge was "devoid of any mention" of such complaints)), or any facts connecting the 2015 and 2016 internal complaints to the 2010 EEOC charge. Rather, the 2015 and 2016 internal complaints as described in the Amended Complaint were based on different misconduct

7

than the 2010 EEOC charge and, therefore, are factually distinct from the allegations in the 2017 EEOC charge. Therefore, the only protected activity on which Straub may base his retaliation claim is the 2010 EEOC charge.[3]

II. **Timeliness**

Straub alleges Jewel retaliated against him for filing his 2010 EEOC charge through various adverse employment actions including multiple demotions, mistreatment by managers and co-workers, and eventually his termination in December 2016. (Dkt. 38). Potential adverse employment actions may include actions similar to those alleged by Straub, including "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities," etc. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465–466 (7th Cir. 2002) (quoting *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir.1999)). Nonetheless, EEOC charges must be filed no later than 300 days after the alleged adverse employment action occurs or else they are time-barred. 29 U.S.C. § 626(d)(1)(B); *see also Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890–91 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 1328, (2017). Therefore, only the following misconduct alleged in the Amended Complaint can serve as potential "adverse employment action" for purposes of the retaliation claim: that "in 2016" management made a "concerted effort . . . to harass and demean [Straub] in hopes that [he] could quit" (Dkt. 38 at 10), that on November 9, 2016 a store director confronted Straub while shopping and informed him that he did not

---

[3] The 2010 EEOC charge clearly constitutes "protected activity" for purposes of Title VII. Title VII prohibits employer retaliation against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under the statute. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002) (quoting 42 U.S.C. § 2000e–3(a)). Such investigations include EEOC charges and internal complaints. *Huri*, 804 F.3d at 833. The parties do not dispute this.

8

have to shop or work at the store (*id.* at 11, Ex. K), and that Straub was terminated on December 12, 2016. (*Id.* at 9).

### III. "Adverse Employment Action" and Causality

The Court's analysis, of course, does not end with the prerequisites of exhaustion and timeliness. To survive the 12(b)(6) motion, Straub must sufficiently allege that the retaliatory misconduct constitutes "adverse employment action" for purposes of Title VII and establish a causal link between the retaliatory misconduct and the protected activity—here, the 2010 EEOC charge. *See Martino,* 715 F.3d at 201–02.

With regard to the former, "[i]n the retaliation context, 'adverse employment action' simply means an employer's action that would dissuade a reasonable worker from participating in protected activity." *Huri,* 804 F.3d at 833. Termination of employment is clearly an "adverse employment action" for purposes of a Title VII retaliation claim. *See Hilt-Dyson,* 282 F.3d at 465–466. Harassment or mistreatment by management, supervisors or co-workers may also constitute an "adverse employment action" if sufficiently severe. *See Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 780 (7th Cir.2007) (recognizing that a "significantly negative alteration in [the] workplace environment'" can constitute an adverse employment action) (quoting *O'Neal v. City of Chicago,* 392 F.3d 909, 911 (7th Cir.2004)); *Herrnreiter v. Chicago Hous. Auth.,* 315 F.3d 742, 744–45 (7th Cir. 2002) (recognizing that "harassment-mistreatment of an employee by coworkers or supervisors that is sufficiently severe to worsen substantially [plaintiff's] conditions of employment" can be an adverse employment action). However, the Court need not determine whether Straub's claims of general harassment in 2016 and the incident with the store director in November 2016 are sufficiently severe under the applicable

standard because, even if they were, Straub fails to establish the requisite causal link between either of the alleged harassments and his 2010 EEOC charge.

While Straub "need not present *proof* of a causal link" between the protected activity and adverse employment action to survive a motion to dismiss, *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 897 (7th Cir. 2003) (emphasis added), he must allege sufficient facts from which the Court can infer that the alleged retaliatory conduct— *i.e.*, the 2016 harassment, November 2016 incident with the store director, or December 2016 termination—was caused by the 2010 EEOC charge. *See Adams*, 742 F.3d at 728 (plaintiff must provide more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). Here, as the Court previously noted, Straub's greatest hurdle is the gap in time between his EEOC charge in 2010 and the alleged retaliatory conduct in 2016. *See Carlson*, 758 F.3d at 828 (the inference of causation weakens as the time between the protected expression and the adverse action increases). For this reason, the Court advised Straub that his amended pleading "must provide more [facts] to show the existence of an 'ongoing pattern of retaliatory behavior'" for his retaliation claim to survive. (Dkt. 33 at 8 (quoting *Carlson*, 758 F.3d at 828)).

Straub fails to demonstrate this retaliatory pattern. Straub states generally that all of the misconduct alleged, regardless of date or actor, was retaliation "from and through [his] 2010 matters." (Dkt. 38 at 11). Even assuming the "2010 matters" refers to the 2010 EEOC charge, however, such conclusory allegations are insufficient to save Straub's claim. Moreover, certain facts alleged in the Amended Complaint contradict rather than support any claim that *all* of the misconduct alleged occurred as part of a pattern of retaliation stemming back to the 20120 EEOC charge. For example, Straub alleges that his demotion

10

in December 2015 was in retaliation for complaints he made to management and, therefore, *not* retaliation or the 2010 EEOC charge. (Dkt. 38 at 10, Ex. H, I). While the Amended Complaint describes a litany of alleged misconduct occurring between 2010 and his ultimate termination in 2016, nothing in the Amended Complaint connects these incidents to each other so as to establish a pattern, let alone a pattern stemming specifically from the 2010 EEOC charge. Rather, the incidents as alleged involved different individuals (*e.g.*, Janice, Jim, Ashley, "a store director," etc.) and different motivations (*e.g.*, retaliation for requesting union intervention or reporting misconduct to management or "in hopes that [Straub] would quit"). (Dkt. 38 at 11). Finally, contrary to Straub's assertion, the allegations fail to establish any "*continued* retaliation," whether it be for the 2010 EEOC charge or not. (*Id.* (emphasis added)). Except for one allegation that Straub was threatened with being sent to bag in 2013, *all* of the misconduct alleged in the Amended Complaint occurred either in 2010 and 2011 or in 2015 and 2016, leaving a three-year gap in the alleged "continued" retaliation that weakens any possible inference that the later conduct was a continuation of the retaliation started—and then paused—three to four years earlier.

Straub not only failed again to establish a retaliatory pattern dating back to 2010 but also failed to establish a causal link between the 2010 EEOC charge and any one of the alleged 2016 adverse employment actions when considered individually. With regard to his 2016 termination, Straub fails to provide any nonconclusory factual allegations to causally connect his termination and the 2010 EEOC charge. As the Court stated in its previous Order, Straub has a significant hurdle to overcome given the time difference between his 2010 EEOC charge and his termination. (*See* Dkt. 33 at 7–8). "As the time between the protected expression and the adverse action increases . . . 'additional proof of

a causal nexus is necessary.'" *Carlson*, 758 F.3d at 828 (quoting *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001)). Indeed, "[a] retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible." *Id.* Here, Straub must overcome a time gap of nearly six years. Yet, he alleges merely that his termination was the "climax" of retaliation stemming from his 2010 EEOC charge (Dkt. 51 at 2)—a conclusory statement with no factual support. In fact, the limited detail Straub does provide about his termination suggest he was fired for reasons other than the 2010 EEOC charge. For example, Straub alleges that he was fired by Jim, a new manager who started in 2015, who repeatedly asked Straub his age and pushed him to work as quickly as younger employees, and against whom Straub lodged complaints with management. If anything, these facts suggest Jim fired Straub for being old or in retaliation for the 2015 complaints to management. None of the facts draw even the narrowest connection between Jim and the 2010 EEOC charge or indicate how Jim, who Straub describes as the "new" store director in 2015 implying Jim was not familiar with Straub's employment history before 2015, would have even been aware of the 2010 EEOC charge. Lastly, Straub explicitly alleges "[t]he company fired [him] for protecting [him]self from attack by another employee"—an incident entirely independent from the 2010 EEOC charge. (Dkt. 38 at 9).

Straub's allegations with regard to the 2016 harassment or November 2016 incident with the store director fail for the same reasons. Straub fails to allege any facts from which the Court can infer any connection between the 2010 EEOC charge and alleged retaliatory misconduct more than five years later in 2016. He alleges only that the harassment in 2016

occurred "in hopes that he would quit"; he fails to allege any motivation whatsoever for store director's mistreatment of him in November 2016. Without more, Straub cannot overcome the undeniable time gap between the alleged protected activity and alleged retaliation. *Carlson*, 758 F.3d at 828 ("If the best a plaintiff can do is allege that he engaged in protected activity and then, years later, the employer took an adverse action against him, the claim may not be permitted to proceed.").

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss for failure to state a claim (Dkt. 39) is granted. Straub's retaliation claim is dismissed with prejudice. Only the age discrimination brought under the ADEA remains.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: September 20, 2018