**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PRESTON STRAUB,          )
                                     )
              Plaintiff,       )     Case No. 1:17-cv-6401
                                     )
      v.                     )     Hon. Steven C. Seeger
                                     )
JEWEL FOODS,              )
                                     )
             Defendant.     )

## <u>MEMORANDUM OPINION AND ORDER</u>

An employee of a grocery store got into a shoving match with another employee in the produce section. Both men were in their 60s. And both were fired.

One of the participants in the scrap, Preston Straub, later sued his former employer, Jewel Foods. He claims that Jewel terminated him because of his age, not because of the fight. He also claims that his managers harassed him for years because of his age, pointing to other examples when store managers made comments about how old he was.

Jewel now moves for summary judgment, arguing that it fired Straub because of the scuffle, and that there is no evidence of age discrimination. For the reasons described below, Jewel's motion is granted.

### Non-Compliance With Local Rules

At the outset, the Court notes that Straub – a pro se litigant – did not comply with the Local Rules about how to present and respond to facts. By and large, Straub did not respond to Jewel's Statement of Facts by offering admissible evidence of his own. On the flipside, Straub's Statement of Additional Facts did not comply with the Local Rules. He made a number of generalized statements, and largely failed to support his statements with admissible evidence.

Jewel submitted a Statement of Facts in compliance with Local Rule 56.1(a). *See* Jewel Local Rule 56.1 Statement of Undisputed Material Facts ("Jewel Statement of Facts") (Dckt. No. 89). Jewel set out its facts in short numbered paragraphs, and supported each statement with declarations, deposition testimony, and other material in the record. *Id.*

In response, Straub followed the Local Rules in part. He filed "a concise response" to each of Jewel's paragraphs. *See* Local Rule 56.1(b)(3)(B); *see also* Straub Response to Jewel 56.1 Statement of Facts ("Straub Resp.") (Dckt. No. 103). But all too often, Straub failed to support his "disagreement[s]" with evidence of his own. *See* Local Rule 56.1(b)(3)(B) (requiring the non-moving party to provide "references to the affidavits, parts of the record, and other supporting materials relied upon"); *see also* Straub Resp., at ¶¶ 1–24, 26, 28–55 (Dckt. No. 103). Straub often stated that he "disagrees with" certain facts, without more. *See* Straub Resp., at ¶¶ 6–7, 13, 16, 20, 24–25, 42 (Dckt. No. 103). Straub also said that he "has no way to confirm" or "has no knowledge" of other facts submitted by Jewel. *Id.* at ¶¶ 14–15, 17–19, 28, 43–53.

At other times, Straub made blanket statements without offering any admissible evidence (such as an affidavit, or deposition testimony). For example, in response to paragraph 6 of Jewel's Statement of Facts, Straub recounted a story about a bakery department employee in her 70s who was demoted. *See* Straub Resp., at ¶ 6 (Dckt. No. 103). But he offered no evidence. *Id.* An unsworn retelling of the story by Straub does not count. In response to paragraphs 8 and 12, Straub stated that Jewel "selectively uses [its] policy" against violence and "selectively enforces the Employee Policy Handbook." *Id.* at ¶¶ 8, 12. Again, just bare statements, unadorned with evidence.

A statement of disagreement or a lack of knowledge, without more, does not create a disputed question of fact. *See* Fed. R. Civ. P. 56(c); *see also* Local Rule 56.1(b)(3). Summary judgment is the time for evidence, not allegations. All too often, Straub presented no evidence on his side of the ledger. There was nothing to weigh against Jewel's evidence.

Straub also filed a Statement of Additional Facts that halfway complied with the Local Rules. His Statement did include numbered paragraphs. *See* Local Rule 56.1(b)(3)(C); *see also* Straub Statement of Additional Facts (Dckt. No. 105). But again, Straub often failed to include any "references to the affidavits, parts of the record, and other supporting materials relied upon" to support his factual assertions. *See* Local Rule 56.1(b)(3)(C); *see also* Straub Statement of Additional Facts, at ¶¶ 2, 4, 6–13, 15–16, 18–24 (Dckt. No. 105). The Court cannot consider unsupported assertions at summary judgment. *See* Fed. R. Civ. P. 56(c)(1).

For example, in paragraph 8, Straub stated that a customer told him that "you were attacked" by the other Jewel employee in the produce section. *See* Straub Statement of Additional Facts, at ¶ 8 (Dckt. No. 105). But he offered no evidence. *Id.* In paragraphs 22 and 23, Straub stated that a "young black male (MAX)" was "involved in a fight and never fired," and so was Jewel Store Director Jim Fanella. *Id.* at ¶¶ 22–23. But again, nothing. *Id.*

Straub's statements about other discriminatory acts against him illustrate the problem. In an attachment to his complaint, Straub gave examples of times when Jewel allegedly discriminated against him, such as a demotion to an undesirable job. *See* Am. Cplt., at 9 of 25 (Dckt. No. 38). But in his Statement of Additional Facts, Straub didn't offer specific facts about those incidents. Instead, he lumped them all together. He made broad-sweeping statements such as "Straub was the recipient of ongoing and continual indignant and harassing treatment." *See* Straub Statement of Additional Facts, at ¶ 3 (Dckt. No. 105) (citing Straub Exhibit 2); *see also*

*id.* at ¶ 25 ("Straub's Exhibit 7 shows he was discriminated over younger employees. Teenagers with much less seniority were given preference of vacation time over Straub."); *id.* at ¶ 26 ("Straub's Exhibit 6 and 8 shows [sic] he was discriminated against continually and no 300 day limit is applicable.").

To compound the problem, Straub in large part failed to support those general statements with admissible evidence. He cited as support his own (unsworn) statements or letters. For example, his Exhibit 2 is a "Statement of Incidents for Jewel Foods by Preston Straub" dated August 10, 2015. *See* Straub Appendix of Exhibits in Opposition to Motion for Summary Judgment ("Straub App. Exs."), at 5–6 of 24 (Dckt. No. 106). The document is an unsworn summary of complaints that he made to Jewel about alleged harassment.

Those paragraphs did not comply with Local Rule 56.1, and the supporting evidence is inadmissible hearsay. But then again, Jewel did not object to Straub's Exhibit 2 – or several other exhibits – on admissibility grounds. *See* Straub App. Exs., at 3 of 24 (Dckt. No. 106) (Jewel Candidate Evaluation Form of Preston Straub, dated June 18, 2001); *id.* at 5–6 of 24 ("Statement of Incidents for Jewel Foods by Preston Straub," dated August 10, 2015); *id.* at 8 of 24 (Jewel Associate Corrective Action Review of Preston Straub, dated April 27, 2009); *id.* at 14 of 24 (LOCAL 881 UFCW Grievance Investigation Report for Member Preston P. Straub, dated March 3, 2016); *id.* at 18–19 of 24 (Letter from Preston P. Straub to Cathy Howe, 881 UFCW, dated January 18, 2019); *see also* Jewel Response to Straub Statement of Additional Facts ("Jewel Resp."), at ¶¶ 1, 3, 5, 14, 26 (Dckt. No. 111).

The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (collecting cases); *see also Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016) (same, collecting

4

cases); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) (same). The Local Rules apply equally to pro se litigants like Straub. *See Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) (citations omitted); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

As a result, this Court could consider all of Jewel's facts to be true, and deem them admitted, except for the limited instances when Straub responded in compliance with the Local Rules. *See* Local Rule 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party."); *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) ("The [district] court addressed at the outset VitalGo's noncompliance with Local Rule 56.1. According to well-established Seventh Circuit law, that noncompliance meant that the district court could exercise its discretion to accept Kreg's statements of fact as undisputed."); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015) (citation omitted); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009).

Similarly, this Court could disregard Straub's Statement of Additional Facts, except where he complied with Local Rule 56.1(b)(3)(C). *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015) ("[The plaintiff's] efforts cannot be considered compliant, let alone strictly compliant, with the requirements of [Local] Rule 56.1. . . . Accordingly, the district court did not abuse its discretion in disregarding the facts contained in [the Local Rule 56.1(b)(3)(C)] statement of additional facts that were not supported by proper citations to the record.") (citation omitted); *Bryant v. Bd. of Educ., Dist. 228*, 347 F. App'x 250, 253 (7th Cir. 2009) (similar); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809–10 (7th Cir. 2005) (similar).

Even so, Straub is a pro se litigant, so this Court will construe his filings liberally. In particular, this Court will consider three incidents that Straub offers as examples of age discrimination, and will address them head-on. *See* Straub App. Exs., at 5–6 of 24 (Dckt. No. 106) ("Statement of Incidents for Jewel Foods by Preston Straub," dated August 10, 2015); *id.* at 18–19 of 24 (Letter from Preston P. Straub to Cathy Howe, 881 UFCW, dated January 18, 2019). The Court ultimately concludes that Straub's claims fail on the merits, even if he had complied with the Local Rules and satisfied the Federal Rules of Evidence.

## Factual Background

Preston Straub began working at a Jewel grocery store in a Chicago suburb in 2001. *See* Straub Resp., at ¶ 9 (Dckt. No. 103). By 2016, he was a 15-year veteran of the store, and was in his early 60s. *Id.* at ¶¶ 2, 9. He worked as a "facer," organizing the products on the shelves so it's easy for customers to see and grab what they want. *Id.* at ¶¶ 32–33; *see also* Straub App. Exs., at 5 of 24 (Dckt. No. 106).

On December 10, 2016, Straub probably started his work day just like any other shift. But for whatever reason, things got ugly in the produce section. Michael Gioiosa, another Jewel employee, was working in that department. The two men exchanged words. Then shoves.

The parties dispute who started it. Jewel says that Straub pushed Gioiosa first. But Straub says that Gioiosa was the instigator. Whoever started it, there is no dispute that there was a physical confrontation. And during the scuffle, each employee laid hands on the other.

Each employee told his side of the story to a Jewel investigator. Gioiosa said that Straub was being "mouthy" as he went through the produce area. *See* Jewel Statement of Facts, at ¶ 19 (Dckt. No. 89). Meanwhile, Gioiosa was pushing a flat cart close to Straub, "which caused a green bin on the cart to fall to the floor." *Id.*; *see also* Jewel Appendix of Exhibits in Support of Motion for Summary Judgment ("Jewel App. Exs."), at 40 of 70 (Dckt. No. 90) (Gioiosa told the Jewel investigator that "Straub was walking in front of [Gioiosa] and [Straub] was trying to go around him. Gioiosa stated that he feels that the cart was close to Straub, which caused a green bin that was on the cart to fall to the floor."); *but see* Straub Resp., at ¶ 19 (Dckt. No. 103) (Straub responds that "Plaintiff was not mouthy but merely asked Mr. Gioiosa to come on and quit blocking the door."). Gioiosa picked up the green bin. *See* Jewel Statement of Facts, at ¶ 19 (Dckt. No. 89). That's when Straub pushed Gioiosa with both hands. *Id.* And then Gioiosa shoved Straub back, sending him into a pole. *Id.*

Straub told his side of the story to the investigator, too. Straub felt like Gioiosa wanted to run him over with the cart. *See* Jewel Statement of Facts, at ¶ 20 (Dckt. No. 89). So Straub said to Gioiosa: "What is your problem? If you have a problem we can take it upstairs to management." *Id.* Gioiosa responded: "What time do you get off and we can take this outside." *Id.* That's when Gioiosa hit Straub with the cart – twice, in his leg. *Id.*; *see also* Straub Resp., at

7

¶ 21 (Dckt. No. 103); Straub Statement of Additional Facts, at ¶ 6 (Dckt. No. 105). Straub

responded by pushing Gioiosa. *See* Jewel Statement of Facts, at ¶ 21 (Dckt. No. 89). Then

Gioiosa pushed Straub into a pole or scale while grabbing Straub's neck. *Id.*

A customer witnessed the brawl and later spoke with the investigator, confirming that an

exchange of words led to an exchange of blows. *Id.* at ¶¶ 17–18. The witness said that Straub

told Gioiosa "I get off at 10 if you want to do something," and Gioiosa said "don't get near me"

and "don't touch me." *Id.* at ¶ 18. According to the witness, Straub then put his hands on

Gioiosa, causing him to fall back. *Id.* Then Gioiosa grabbed Straub by the neck and pushed him

into a pole. *Id.*

Like all too many battles, there's room for debate about who fired the first shot. But the

basic outline of the fracas is undisputed. Straub and Gioiosa had an argument that led to a

physical altercation. And, at some point during the scuffle, Straub pushed Gioiosa, who shoved

him back, throttling Straub and sending him careening into a pole.

Straub apparently finished his shift without further incident. He worked another full shift

two days later on December 12, 2016. *See* Jewel Resp., at ¶ 10 (Dckt. No. 111). At that point,

no one in management had said anything to Straub about his altercation.

Things changed when Straub reported to work on December 13, 2016. Unbeknownst to

Straub, Jewel had opened an investigation shortly after the altercation, based on a tip from a

customer. *See* Jewel Statement of Facts, at ¶¶ 14–15 (Dckt. No. 89). Jewel referred the matter to

a "Loss Prevention Manager." *Id.* at ¶ 15. So on December 13, Jewel Store Director Jim Fanella

suspended Straub pending the outcome of the investigation. *Id.* at ¶ 16. That turned out to be

Straub's last shift at Jewel.

The Jewel investigator reviewed video footage of the altercation. *Id.* at ¶ 17. He took written statements from Fanella, as well as the assistant store manager who was first alerted about the incident. *Id.* The investigator promptly interviewed the customer who witnessed the scuffle, too. *Id.* at ¶¶ 17–18. And a few days later, on December 16, the investigator interviewed both Straub and Gioiosa. *Id.* at ¶¶ 19–20, 23. Straub refused to provide a written statement. *Id.* at ¶ 22.

After the investigator finished his work, Jewel fired both employees. Store Director Fanella – who is 51 years old – fired Straub, effective December 13, 2016, the day of his last shift. *Id.* at ¶¶ 25, 28. He also fired Gioiosa, effective December 12, 2016. *Id.* at ¶ 46.

Fanella documented the decision to fire Straub in an "Associate Corrective Action Review" form dated December 26, 2016 – two weeks after the altercation. *See* Jewel App. Exs., at 57 of 70 (Dckt. No. 90). The form stated that "[b]ased on a Loss Prevention Investigation, Preston [Straub] was involved in a physical altercation on the sales floor with another associate." *Id.* Under "Action Taken," Fanella wrote: "This incident will result in: **Termination**." *Id.* (bold in original).

According to Straub, the firing was only the latest example of mistreatment based on his age. Straub claims that Jewel's age discrimination goes back years. Jewel's discrimination against him was "ongoing" and "continual," and he "was treated different that [sic] other employees." *See* Straub Statement of Additional Facts, at ¶ 24 (Dckt. No. 105).

Straub asserts that the harassment by Jewel management started in 2010, after he filed an EEOC complaint on unrelated issues. *Id.* at ¶¶ 2–3. It was around this time that management transferred Straub to the "beginner's job" of "facer" after ten years of working at Jewel as a "produce clerk." *See* Am. Cplt., at 9 of 25 (Dckt. No. 38). Straub believed that his transfer to

the facer position was age discrimination because "they put me, at my age, in this here beginner's job that younger people could do quicker." *See* Jewel App. Exs., at 17 of 70, 74:16–18 (Dckt. No. 90); *see also* Straub Resp., at ¶ 36 (Dckt. No. 103). So, when managers criticized Straub's performance in the facer position – saying "you're not working fast enough," "you're not doing the job," "you have to finish these tasks," and "you didn't finish your aisles" – Straub saw it as age discrimination. *See* Straub Resp., at ¶ 36 (Dckt. No. 103) (quoting Jewel App. Exs. at 17 of 70, 74:1–11 (Dckt. No. 90)).

Straub stayed in the facer position until sometime in 2015, when he was transferred to the dairy department. *See* Am. Cplt., at 9 of 25 (Dckt. No. 38). But the move to dairy was short-lived. In late 2015 or early 2016, Straub was transferred back to the facer job. *See* Straub Resp., at ¶ 33 (Dckt. No. 103).

To support his claim of ongoing harassment, Straub recounts three separate confrontational discussions with his supervisors about his performance. The first two incidents took place in July 2015. In the first incident, Straub received a bit of a tongue-lashing from Store Director Jim Fanella while working in one of the aisles. *See* Straub Statement of Additional Facts, at ¶ 3 (Dckt. No. 105); *see also* Straub App. Exs., at 5 of 24 (Dckt. No. 106).[1] Fanella "proceeded to get in my face and asked me how old I was. I did not answer and he asked me again, how old are you." *See* Straub App. Exs., at 5 of 24 (Dckt. No. 106). Fanella continued the harangue, saying "the store was a wreck, etc, etc. etc. [sic]." *Id.*

The second incident happened a week later, when Straub was again "facing the dairy department and helping customers." *Id.* "I had just finished helping one customer and saying hello to the former dairy manager" when Fanella approached Straub and summoned him to the

---

[1] As explained in the section above on Non-Compliance With Local Rules, the Court considers this exhibit even though it is inadmissible hearsay, as Jewel did not object to its admissibility.

"back room." *Id.* Fanella "proceeded to verbally attack me from a very close distance. He was up in my face asking me how long have you worked here?" *Id.* Fanella criticized the way Straub was helping customers, and he "said the store was a wreck and that I was not working hard enough. He said that I needed to pick it up." *Id.* Fanella threatened to transfer Straub out of his current position: "he said that if I don't like it, I could finish out my time with the company bagging." *Id.*

Unlike the first incident, the second incident didn't involve anyone calling attention to his age. Instead, the store director commented on his years of experience at the store.

The third incident took place six months later, in January 2016. Straub had an unpleasant run-in with a Jewel manager named "Jeremy," and he memorialized it in a letter to his union representative. *See* Straub Statement of Additional Facts, at ¶ 26 (Dckt. No. 105) (citing Straub App. Exs., at 18–19 of 24 (Dckt. No. 106)).[2] "Last night Jeremy was giving me directions again in a very demeaning and indignant manner." *See* Straub App. Exs., at 18 of 24 (Dckt. No. 106). Jeremy "corralled me in the back room and continued to intimidate and belittle me." *Id.*

> He asked me how my knees were and whether I could finish my [a]isles. I responded by telling him I can do the best that I can. I told him that if I am in [a] certain [a]isle where I have to continually go up and down then my knees are going to be hurting. I suggested a stool with wheels.

*Id.*

Jeremy responded by saying that high school kids could do his job. Jeremy "informed me that he has 16 & 17 year olds [sic] that can do the job so I should be able to get everything finished that they give me." *Id.* "I have to tell you that it was almost as though he was enjoying trying to harass me and intimidate me." *Id.* at 19.

---

[2] Again, Jewel did not object to this exhibit's admissibility, so the Court will consider it.

As he recounted his mistreatment in his letter, Straub seemed almost resigned to his situation. He felt like he had wasted 15 years of his life:

> For the record, I now expect nothing short of this type of continued behavior from the management teams of this company. I have said and restate that I have now wasted 15 years with Jewel. I deeply regret ever accepting this job and thinking I would be treated with dignity and respect.

*Id.*

Straub filed a grievance with his union in March 2016 that echoed the same themes. *See* Straub Statement of Additional Facts, at ¶ 26 (Dckt. No. 105) (citing Straub App. Exs., at 14 of 24 (Dckt. No. 106)). Straub alleged "that management continually addresses him [Straub] in an argumentative, demeaning, belittling, disrespectful, condescending and harassing manner." *See* Straub App. Exs., at 14 of 24 (Dckt. No. 106); *see also* Straub Statement of Additional Facts, at ¶ 26 (Dckt. No. 105).

In December 2016 – nine months after the grievance – Straub got into the pushing match, and was told to leave Jewel for good.

### Procedural Background

On June 1, 2017, Straub filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. *See* Straub Resp., at ¶ 29 (Dckt. No. 103); *see also* Cplt. at 9 of 9 (Dckt. No. 1). The 2017 EEOC Charge asserted discrimination based on age, race, and retaliation. *See* Cplt. at 9 of 9 (Dckt. No. 1). He also asserted that Jewel had retaliated against him for filing a different EEOC charge in 2010:

> I began my employment with respondent on or about June 27, 2001. My most recent position was Facer. I filed an EEOC charge 846-2010-29751. Subsequently, I was subjected to harassment and different terms and conditions, including, but not limited to, a change of assignment. On or about December 12, 2016, I was discharged for an offense that a Black employee was not discharged for. I believe I have been discriminated against because of my race,

> White, and in retaliation for engaging in protected activity in violation of Title VII . . . . I believe I have been discriminated against because of my age, 60 (DOB: 1955), and in retaliation, in violation of the Americans Discrimination in Employment Act of 1967, as amended.

*Id.*

The EEOC responded by issuing a Dismissal and Notice of Rights on June 2, 2017. *See* Straub Resp., at ¶ 31 (Dckt. No. 103). The notice informed Straub that the agency was unable to conclude based on its investigation that Jewel had violated any statute. *Id.* at ¶ 30; *see also* Am. Cplt., at 7 of 25 (Dckt. No. 38). According to the notice, Straub had 90 days from receiving the notice to sue based on the EEOC Charge. *See* Am. Cplt., at 7 of 25 (Dckt. No. 38). Straub received the notice on June 5, 2017. *Id.* at 3 of 25.

Straub filed this lawsuit against Jewel on September 5, 2017, 92 days later.[3] *See* Cplt. (Dckt. No. 1). Straub advanced claims for age and color discrimination (but not race discrimination), sexual harassment, and retaliation. *See id.* at 3, 6 of 9; *see also* Dckt. No. 33, at 1. Jewel moved to dismiss all of Straub's claims, with the exception of his ADEA claim for discriminatory discharge. *See* Dckt. No. 17; *see also* Dckt. No. 18, at 1–2.

Judge Kendall (the District Judge presiding over this case, before reassignment) granted Jewel's motion to dismiss the claims for color discrimination, sexual harassment, and retaliation. *See* Dckt. No. 17 (Motion to Dismiss); Dckt. No. 33 (Memorandum Opinion and Order dated April 27, 2018). Straub amended the complaint, and Jewel filed another motion to dismiss. *See* Dckt. No. 38 (Amended Complaint); Dckt. No. 39 (Motion to Dismiss Amended Complaint).

---

[3] The Court notes that Straub filed his lawsuit *92 days* after he received his right-to-sue notice. So Straub blew the 90-day deadline provided in the right-to-sue notice. But Straub's tardiness does not doom his claims at this stage. Claims-filing deadlines in employment discrimination cases are not jurisdictional, and Jewel forfeited any timeliness argument by failing to raise it in one of its two motions to dismiss, or in this motion for summary judgment. *See Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019).

Judge Kendall dismissed the retaliation claim a second time. *See* Dckt. No. 55 (Memorandum Opinion and Order dated September 20, 2018).

In its September 20, 2018 opinion addressing the second motion to dismiss, the Court noted that "only" the age discrimination claim under the Age Discrimination in Employment Act ("ADEA") remained. Dckt. No. 55, at 13. But the Court did not specify exactly what *types* of ADEA claims remained.

Straub's Amended Complaint – a completed copy of the Northern District's form for employment discrimination claims – did not elaborate on his theories of discrimination. The form included a question about the defendant's alleged wrongful actions, and Straub responded by checking only two boxes: discriminatory discharge, and retaliation. *See* Am. Cplt., at 4 of 25 (Dckt. No. 38). He did not check the boxes for "fail[ure] to promote" or "fail[ure] to stop harassment," and he did not add anything under "other," either. *Id.*

But in an attachment describing the facts, Straub did describe "continued harassment" and demotions. *Id.* at 9–10 of 25. At the end of his narrative description, Straub wrote: "All of the above is believed to be allegedly due to my age and past protected conduct and is retaliation from and through my 2010 matters." *Id.* at 10 of 25. The September 20, 2018 opinion addressed the alleged "continued harassment" and demotions, but only insofar as they supported Straub's retaliation claim (which the Court dismissed). *See* Dckt. No. 55, at 9–11.

Jewel now moves for summary judgment on two types of age discrimination claims under the ADEA: (1) hostile work environment, and (2) disparate treatment, based on discriminatory demotions and discriminatory discharge.

14

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). The Court's role is not to decide who is right, or to pick which side is telling the most convincing story. The Court should not "weigh conflicting evidence . . . or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citations omitted). Instead, the Court simply "determine[s] whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). That is, the basic decision is whether there is enough evidence to get to a trial in the first place.

The Court must "constru[e] the facts and mak[e] reasonable inferences in favor of the nonmovant." *H.P. by & Through W.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (cleaned up). So, the Court must view the evidence in the light most favorable to Straub, the non-movant.

If the party moving for summary judgment shows that there is no disputed issue of material fact, the burden shifts to the nonmovant, who must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation and internal quotation marks omitted); *see Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material fact.*" *Scott*, 530 U.S. at 380 (emphasis in original, cleaned up).

In ruling on an ADEA claim at summary judgment, the Court must ask "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the

discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "[T]he plaintiff's age must have actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 141 (2000) (brackets in original, cleaned up); *see also Kentucky Ret. Sys. v. EEOC*, 554 U.S. 135, 143–48 (2008) (holding that pension calculations that accounted for age did not violate the ADEA because they were not "actually motivated by age") (cleaned up); *Carson v. Lake Cty., Ind.*, 865 F.3d 526, 532 (7th Cir. 2017) ("A plaintiff seeking to recover for disparate treatment under the ADEA must 'prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action.'") (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)). The "same analytical framework" applies to all "employment discrimination cases[,] whether they are brought under the ADEA or Title VII." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009).

**Analysis**

## I.    Hostile Work Environment

Jewel moved for summary judgment on Straub's hostile work environment claim, to the extent that Straub asserts any such claim at all.

It is up in the air whether Straub is advancing a claim for hostile work environment. Straub did not include a separate "hostile work environment" count in his Amended Complaint (Dckt. No. 38). Jewel, not Straub, appears to be the first party who raised the possibility that Straub might be making a hostile work environment claim. *See* Jewel Memorandum of Law in Support of Summary Judgment ("Jewel Mem."), at 6–7 (Dckt. No. 88). But Straub's opposition to the motion appears to confirm that he is bringing such a claim, albeit in conclusory fashion: "Plaintiff's claims will show that the 'harassing' comments of which he complained were

continually sufficiently severe or pervasive so as to create an objectively hostile work environment." *See* Straub Memorandum of Law in Opposition to Summary Judgment ("Straub Mem."), at 1 (Dckt. No. 104); *see also* Straub Statement of Additional Facts, at ¶ 3 (Dckt. No. 105) ("Straub was the recipient of ongoing and continual indignant and harassing treatment."); *id.* at ¶ 24 ("Straub's Exhibits show that his discrimination was ongoing, continual and that he was treated different that [sic] other younger employees."); Straub App. Exs., at 5–6 of 24 (Dckt. No. 106) (summary of two incidents in which Jim Fanella criticized Straub's performance in July 2015); *id.* at 18–19 (letter from Straub to union representative, "Subject: Demotion and Demeaning & Indignant Treatment").

The Seventh Circuit has not addressed whether hostile work environment claims are actionable under the ADEA. *See Fugate v. Dolgencorp, LLC*, 555 F. App'x 600, 603 n.1 (7th Cir. 2014) (citations omitted). Instead, the Seventh Circuit has, more than once, analyzed (and ultimately rejected) all such claims by "assum[ing] without deciding that plaintiffs may bring a claim of a hostile work environment under the ADEA." *Id.*; *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005); *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001). This Court will follow the Seventh Circuit's lead, and will make the same assumption.

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or [pervasive] to alter the conditions of the victim's employment and create an abusive working environment." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (cleaned up). "To survive summary judgment, [the plaintiff] must present evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive;

and (4) there is a basis for employer liability." *Id.* (cleaned up). The Court must consider all circumstances, such as "the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Id.* "To support a hostile work environment claim, the plaintiff need not show that the complained-of conduct was explicitly [age-related], but must show it had [an age-related] character or purpose." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011).

Generally, hostile comments do not qualify as actionable adverse employment actions unless the hostility was severe or pervasive. *See Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002). But it is important to note "that the harassing conduct does not need to be both severe *and* pervasive." *See Jackson v. Cnty. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) (emphasis in original). One instance of conduct may be enough if it is sufficiently severe. *See Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001). Conversely, separate incidents that are not individually severe may trigger liability because of their frequency. *See Jackson*, 474 F.3d at 499. Less severe incidents can add up to something bigger, and a single incident can be big enough on its own. The key inquiry is whether the conduct was so severe or pervasive that it altered the conditions of the employment relationship. *Id.*

Viewed under that standard, Straub has failed to present evidence that could support a finding by a reasonable jury that Jewel created a hostile work environment. Straub relies on three interactions with managers: two with Store Director Fanella in July 2015, and one with Assistant Manager "Jeremy" in January 2016.[4]

---

[4] These incidents are recounted in exhibits offered by Straub in opposition to Jewel's motion. As explained previously, Jewel did not object to these exhibits on grounds of admissibility, so the Court will consider them in ruling on the motion.

The incidents with Fanella started while Straub was working on the grocery store floor. In the first instance, Fanella dressed Straub down in the presence of two assistants and a co-manager, saying that the "store was a wreck" (Straub was in charge of "facing" the products on the shelves). *See* Straub App. Exs., at 5 of 24 (Dckt. No. 106). During this incident, Fanella got "in my face and asked me how old I was. I did not answer and he asked me again, how old are you." *Id.* A reasonable jury could find that this was a direct comment on Straub's age.

In the second incident, one week later, Straub was "facing the dairy department and helping customers" when Fanella summoned him to a back room and got "up in [Straub's] face." *Id.* Fanella chewed him out, saying Straub was not providing proper customer service, "the store was a wreck," he "was not working hard enough" and "needed to pick up the pace." *Id.* Fanella "proceeded to verbally attack me from a very close distance. He was up in my face asking me how long have you worked here?" *Id.*

A reasonable jury could not view that comment – "how long have you worked here?" – as a comment on Straub's age. True, a 15-year veteran at a job is likely to be older than a fresh recruit, although that is not always the case. That is one possible inference, looking at the question "how long have you worked here?" in isolation. But in the context of Fanella's harangue about Straub's poor work performance, the only reasonable interpretation is that Straub's performance was not matching his level of experience in the job, not that Fanella was saying Straub was old. The manager commented on his years of experience at the store, not his age. Not every reference to time is a reference to age.

So, Straub relies on two interactions with Store Director Fanella to support his hostile work environment claim. But Fanella commented on Straub's age during only one of the two interactions.

19

In the same vein, Straub complained in a January 2016 letter to his union representative about a heated conversation with Jewel Assistant Manager "Jeremy":

> Last night Jeremy was giving me directions again in a very demeaning and indignant manner. He corralled me in the back room and continued to intimidate and belittle me. He asked me how my knees were and whether I could finish my [a]isles. I responded by telling him I can do the best that I can. I told him that if I am in certain [a]isle [sic] where I have to continually go up and down then my knees are going to be hurting. I suggested a stool with wheels. He informed me that *he has 16 & 17 year olds that can do the job* so I should be able to get everything finished that they give me.

Straub App. Exs., at 18 of 24 (Dckt. No. 106) (emphasis added). This is the only other example in the record of a Jewel employee commenting – at least indirectly – about Straub's age.

The only other evidence reasonably connected to Straub's age is his complaint about vacation time in May 2016. He got a voicemail from a Jewel employee denying his requested vacation dates, explaining that teenage employees with less seniority needed those days off for graduation. *See* Dckt. No. 106-1. Jewel disputes the admissibility and relevance of this voicemail. *See* Jewel Resp., at ¶ 25 (Dckt. No. 111). But even assuming the voicemail is admissible, it does not move the needle on Straub's hostile work environment claim. Allowing coworkers to attend their high school graduations presents staffing issues, no doubt. But without more evidence showing that Jewel gave younger workers vacation time over older workers, no reasonable jury could view this isolated incident as age discrimination.

Drawing all reasonable inferences and viewing the evidence in the light most favorable to Straub, the undisputed evidence shows that Jewel managers gave Straub menial and physically demanding jobs and criticized his performance. A reasonable jury could find that, in the first incident, one of Straub's managers suggested that Straub was too old to do his job. On the third occasion, a manager suggested that he was not physically fit enough to do the work, compared with teenage employees.

But no reasonable jury could find that the three incidents – including the second, "how long have you worked here" incident – amounted to a hostile work environment based on age discrimination. Viewed in isolation or collectively, the comments were not severe enough to create a hostile work environment on their own. *See Boss v. Castro*, 816 F.3d 910, 920–21 (7th Cir. 2016) (collecting cases in which a single racial slur was not sufficient to go to the jury on the plaintiff's racial discrimination hostile work environment claim); *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005) (holding that several "isolated comments" by coworkers "about Racicot's age were neither severe or pervasive enough to create an objectively hostile work environment."). A few mild examples over roughly a year and a half is not pervasive enough to create a hostile work environment. *See McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004) (holding that two incidents of sexually suggestive comments and one incident of inappropriate physical touching were not sufficiently severe or pervasive to create a hostile work environment). Even then, allowing coworkers to attend their high school graduations is a dubious example of age discrimination.

Straub's facts are similar to those in *Racicot v. Wal-Mart Stores, Inc.*, in which the Seventh Circuit affirmed summary judgment for the defendant on an ADEA hostile work environment claim. *See Racicot*, 414 F.3d 675 (7th Cir. 2005). One of Racicot's coworkers at Wal-Mart "told her on several occasions that 'she shouldn't be working at [her] age.'" *Id.* at 676. Another coworker "regularly yelled at her, called her names like 'son of a bitch,' cursed in her presence, interfered with her work and vacation schedule, and told her, 'if you were younger, you could pick up the boxes when heavy shipments arrived at the store.'" *Id.* Like Straub, Racicot complained about this treatment to management. *Id.* After working at Wal-Mart for a

little more than one year, Racicot was fired for giving discounts and preferential treatment to friends and family. *Id.* at 677.

The Seventh Circuit held that the coworkers' "isolated comments about Racicot's age were neither severe or pervasive enough to create an objectively hostile work environment." *Id.* at 678 (citation omitted). It was "boorish behavior but not actionable age harassment." *Id.*

The facts at issue here are even less severe and pervasive than those in *Racicot.* Where Racicot's coworkers told her directly that she was too old to work, Straub's supervisors beat around the bush (at worst), asking how old he was, and saying that he needed to match the job performance of younger employees. The comments were less severe than in *Racicot.* And Straub complains about only two age-related incidents, whereas Racicot complained of repeated age-related comments. *Id.* at 676. So the comments directed at Straub were less pervasive than in *Racicot.*

The rest of the record evidence shows no connection – oblique or otherwise – to Straub's age. He was demoted to the "beginner's job" of "facer" after ten years of working at Jewel. *See* Am. Cplt., at 9 of 25 (Dckt. No. 38); *see also* Straub Statement of Additional Facts, at ¶ 2 (Dckt. No. 105). He was hounded by his managers for not doing his job fast enough: "you're not working fast enough," "you're not doing the job," "you have to finish these tasks," and "you didn't finish your aisles." *See* Straub Resp., at ¶ 36 (Dckt. No. 103).

Straub felt this criticism was discriminatory because the "younger kids" could do the job of "facer" faster. *Id.*; *see Ezell v. Potter*, 400 F.3d 1041, 1048 (7th Cir. 2005) (plaintiff must subjectively feel he suffered in a hostile work environment) (citation omitted). But there is no evidence that his demotion, or the comments about his job performance, were objectively related to his age. *See Duncan v. Thorek Mem'l Hosp.*, 784 F. Supp. 2d 910, 920–21 (N.D. Ill. 2011)

22

(holding that harassing calls by supervisor to plaintiff's personal phone were not age-related, and did not support hostile work environment claim); *see also Maglieri v. Costco Wholesale Corp.*, 2018 WL 1316735, at *4 (N.D. Ill. 2018) (holding that rudely delivered performance criticism was not age-related discrimination supporting plaintiff's hostile work environment claim).

Considering all of the evidence in the light most favorable to Straub and taking all reasonable inferences in his favor, no reasonable jury could find that Straub suffered in a hostile work environment due to age discrimination. The Court grants summary judgment to Jewel on Straub's ADEA hostile work environment claim, to the extent that he advances such a claim at all.

## II. Disparate Treatment

Straub's pro se complaint appears to assert a disparate treatment claim, backed by two different theories.[5] First, Straub complains that Jewel demoted him twice to a "beginner's job" of "Facer," and he offers those demotions as examples of age discrimination. *See* Am. Cplt., at 9 of 25 (Dckt. No. 38). Second, Straub claims that he was fired because of his age. *Id.* at 10 of 25 (alleging that the manager "ultimately fire[d] me without proper cause").

"A plaintiff seeking to recover for disparate treatment under the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Carson v. Lake County, Indiana*, 865 F.3d 526, 532 (7th Cir. 2017) (cleaned up). "[I]t's not enough to show that age was *a* motivating factor. The plaintiff must

---

[5] Straub's complaint is a completed copy of the Northern District's form for employment discrimination claims. *See* Am. Cplt. (Dckt. No. 38). Question No. 13 asked him to identify the "facts supporting the plaintiff's claim of discrimination." *Id.* at 5 of 25. In response, Straub submitted a narrative response that is a little more than two pages long. *Id.* at 9–11 of 25. According to Straub, "[a]ll of the above is believed to be allegedly due to my age . . . ." *Id.* at 10. The Court interprets the allegations broadly in light of his status as a pro se litigant.

prove that, but for his age, the adverse action would not have occurred." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019) (cleaned up, emphasis in original).

Unlike a hostile work environment claim, a disparate treatment claim doesn't require the discrimination to "permeate[]" the workplace. *See Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (cleaned up). The question is whether the evidence would "permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The Court considers the evidence as a whole, "rather than asking whether any particular piece of evidence proves the case by itself." *Id.*

This Court grants summary judgment to Jewel on the disparate treatment claim, including both theories, but for different reasons. First, Straub failed to raise any disparate treatment claim about his demotions with the EEOC within the applicable 300-day deadline, so his discriminatory demotion claims are time-barred. Second, the disparate treatment claim about his termination fails because there is no genuine dispute about whether he was fired because of his age.

## A.     Demotions to "Facer"

Straub asserts in his Amended Complaint that Jewel "has demoted [me] several times." *See* Am. Cplt., at 9 of 25 (Dckt. No. 38). He started out working in the produce department. *Id.* After 10 years of experience in that department, Jewel "removed [Straub] from the Produce Department " in June of 2011 and demoted him to "a beginner's job" of facer. *Id.* The June 2011 demotion happened "[a]fter [he] filed a complaint with the IDOL, IDOHR and the EEOC" about access to his personnel records. *Id.*

Straub "remained in the beginner's job (facing) until around 2015." *Id.* Then, a "new store director (Rose) realized my skills and moved me to the Dairy Department." *Id.* But the

24

stint in dairy was short-lived, as the second demotion was just on the horizon. A "new store director Jim . . . again demoted [Straub] to a beginner's job of Facer in December (Christmas) of 2015." *Id.* That was the timing that Straub alleged in his Amended Complaint. At summary judgment, Straub has agreed that the second demotion happened "at the very end of 2015 or the beginning of 2016." *See* Straub Resp., at ¶ 33 (Dckt. No. 103)

An employee must file an age discrimination claim as a charge with the EEOC before filing a lawsuit in federal court. The statute expressly requires the employee to complain to the EEOC first, and then file suit by a certain deadline:

> (d) Filing of charge with Commission . . .

> > (1) No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed--

> > > (A) within 180 days after the alleged unlawful practice occurred; or

> > > (B) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d).

The statute has two timeclocks: 180 days, or 300 days. Whether the 180-day or 300-day deadline applies depends on whether this is a "section 633(b)" case – *i.e.*, whether the discrimination occurred in a state with its own laws prohibiting employment discrimination based on age. *See* 29 U.S.C. § 633(b). For section 633(b) to apply, the state anti-discrimination law also must give power to the state agency to remedy the discrimination. *See id.*; *Kren v. City of Springfield, Illinois*, 1998 WL 152974, at *2 (7th Cir. 1998) (quoting 29 U.S.C. § 633(b)).

Illinois has such a law. *See Kren*, 1998 WL 152974, at *2. So, age discrimination claims in Illinois are subject to the 300-day deadline for filing an EEOC charge. *See* 29 U.S.C. § 626(d)(1)(B).

If a plaintiff fails to bring his claim to the EEOC within 300 days, it evaporates as a potential claim in a subsequent lawsuit. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890–91 (7th Cir. 2016). This claim-filing requirement ensures that the employer receives "prompt notice" of the claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002). It also "give[s] the EEOC an opportunity to investigate the complaints and help the parties settle the dispute without litigation." *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011) (citations omitted); *see also Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019).

The question here is whether Straub brought EEOC charges for disparate treatment based on his demotions within 300 days of the demotion. Straub identifies two different demotions. The first demotion "took place around June of 2011," when Straub moved from the produce department to the "beginner's job" of "Facer." *See* Am. Cplt., at 9 of 25 (Dckt. No. 38). Straub "remained in" the facer position from 2011 "until around 2015," when he moved to the dairy department. *Id.* The second demotion took place sometime "at the very end of 2015 or the beginning of 2016," when Jewel moved Straub from the dairy department back to the "Facer position." *See* Straub Resp., at ¶ 33 (Dckt. No. 103).[6]

---

[6] In an attachment to the Amended Complaint, Straub alleged that the demotion to the face position took place "in December (Christmas) of 2015." *See* Am. Cplt., at 9 of 25 (Dckt. No. 38). But in its Statement of Facts, Jewel contends that the most recent demotion took place "at the very end of 2015 or the beginning of 2016," and Straub agreed. *See* Straub Resp., at ¶ 103 (Dckt. No. 103). The Court uses the latter date because it is more favorable to Straub as the non-moving party. The later the demotion, the more time Straub had to raise it with the EEOC.

Straub's chronology lays down a few markers, and allows the Court to determine when he needed to bring charges to the EEOC. For the demotion in June 2011, Straub needed to file an EEOC charge by April 2012 (that is, 300 days later). For the demotion in late 2015 or early 2016, the 300-day deadline expired – at the very latest – in February 2017, if the Court generously assumes that the phrase "beginning of 2016" includes April. *See* Straub Resp., at ¶ 33 (Dckt. No. 103).

Straub did not meet either deadline. He filed the EEOC charge on June 1, 2017. *See id.* at ¶ 29. He missed the deadline for his 2011 demotion by five years (that is, he needed to file by April 2012). He missed the deadline for the 2016 demotion by at least four months (that is, he needed to file by February 2017). Straub's claims in this lawsuit based on the demotions are therefore time-barred because he failed to timely raise them before the EEOC. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890–91 (7th Cir. 2016).

Straub did submit a charge to the EEOC in 2010, but it does not help. That charge involved an issue about personnel records, not demotions or termination. *See* Am. Cplt., at 9 of 25 (Dckt. No. 38); *id.* at 13–20 of 25. And it came too early, not too late. The 2010 EEOC charge came *before* the demotions and the termination.

Straub believes that an exception applies and saves his demotion-related claims. He argues that the "300-day statute of limitations for pursuing" his ADEA claims "is waived when the discriminatory claims are continual," and he cites a section of text from the EEOC website. *See* Straub Mem., at 2 (Dckt. No. 104). Straub is correct that the continuing violation doctrine sometimes comes into play. But it does not save his claim here.

Under the continuing violation doctrine, a "Title VII plaintiff may recover for otherwise time-barred conduct that is part of a single, ongoing unlawful employment practice if at least one

related act occurs during the limitations period." *Barrett v. Illinois Dep't of Corr.*, 803 F.3d 893, 898 (7th Cir. 2015). The Seventh Circuit has described the doctrine as somewhat of a misnomer because "[d]espite its name, it is a doctrine about cumulative rather than continuing violation." *Lewis v. City of Chicago*, 528 F.3d 488, 493 (7th Cir. 2008), *rev'd on other grounds sub nom. Lewis v. City of Chicago*, 560 U.S. 205 (2010). A series of inappropriate incidents might not, on their own, amount to unlawful discrimination, but added together, over time, they might reach the level of unlawful discrimination. Because the unlawful discrimination "blossoms into a wrongful injury" due to incidents accumulated over time, the violation can't be said to have happened at any one particular moment in time. *Id.*

"Discrete acts," on the other hand, fall outside of the continuing violation exception, including such discrete employer actions "as termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Each one "constitutes a separate actionable 'unlawful employment practice.'" *Id.* These discrete acts don't blossom into unlawful discrimination – either they are discriminatory when they happen, or they aren't.

"A demotion [is] like other discrete acts of alleged discrimination." *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007). A discriminatory demotion is thus "an unlawful employment practice that must be brought to the EEOC's attention within 300 days of its occurrence." *Id.* at 460. Straub's demotions are "discrete acts" subject to the 300-day deadline, and therefore do not fall within the continuing-violation exception. *See id.*

### B. Termination

Straub's last claim is that he was fired due to his age. *See* Straub Resp., at ¶¶ 40–41 (Dckt. No. 103); *see also* Am. Cplt., at 10 of 25 (Dckt. No. 38) (alleging that "Store Manager Jim" Fanella "fire[d] me without proper cause" and "due to my age"). At the summary judgment

28

stage, the Court must determine whether there is a genuine dispute of material fact over whether Straub's age caused Jewel to fire him. *See Carson v. Lake County, Indiana*, 865 F.3d 526, 532 (7th Cir. 2017). Indeed, under the ADEA, age must be the "but-for" cause of Straub's firing. *Id.* So, to survive summary judgment, Straub must come forward with evidence that Jewel fired him because of his age. *Id.*

Straub argues that Jewel's actions were discriminatory under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See* Straub Mem., at 2 (Dckt. No. 104). Although the "*McDonnell Douglas* framework is not the only method plaintiffs may use to prove their claim," it is "one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's age or another proscribed factor." *See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (cleaned up); *see also David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

The *McDonnell Douglas* framework requires a plaintiff to build a *prima facie* case with four elements. "Under this approach, the plaintiff must show evidence that (1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *McDaniel*, 940 F.3d at 368 (cleaned up). "If the plaintiff meets each element of her prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.* (cleaned up).

Putting aside the *McDonnell Douglas* burden-shifting framework, the Court also will consider whether a reasonable jury could find that Straub's firing was discriminatory based on the evidence as a whole. After *Ortiz*, courts must not focus exclusively through the *McDonnell Douglas* lens. The *McDonnell Douglas* burden-shifting framework is "merely one way of culling the relevant evidence" to adjudicate an employment discrimination claim. *McDaniel*, 940 F.3d at 368 (cleaned up). Even when analyzing a claim in the *McDonnell Douglas* framework, courts must conduct a separate analysis to "assess cumulatively all the evidence presented by [the plaintiff] to determine whether it permits a reasonable factfinder to determine that [the adverse employment action] was attributable to her age, race, or sex." *David*, 846 F.3d at 224; *see also McDaniel*, 940 F.3d at 368.

### 1.    *McDonnell Douglas* Burden-Shifting Framework

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must first make out a *prima facie* case that his termination was based on discrimination. Then, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff. If the employer meets its burden, the burden then shifts back to the plaintiff to show that the employer's proffered reason was mere pretext for discrimination.

Straub has failed to meet either of his burdens under the *McDonnell Douglas* framework. Straub's *prima facie* case fails as a matter of law because Straub did not meet Jewel's legitimate expectations, and because there is no evidence of a younger employee who was similarly situated to Straub but was not fired. There is also no evidence that Jewel's legitimate, nondiscriminatory reason for firing Straub – fighting with a co-worker – was a pretext for age discrimination.

### a.    Straub's *Prima Facie* Case

Only two of the four elements of a *prima facie* case are at issue in this motion. Jewel does not dispute that Straub is more than 40 years old, making him part of the class protected by

the ADEA. *See* 29 U.S.C. § 631(a); Jewel Statement of Facts, at ¶ 2 (Dckt. No. 89).

Termination is an adverse employment action, too. *See, e.g., Stelter v. Wis. Physicians Serv. Ins.
Corp.*, 950 F.3d 488, 491 (7th Cir. 2020). So only two elements of a *prima facie* case remain

unresolved: (1) whether Straub met his employer's legitimate expectations before his firing; and

(2) whether Jewel declined to fire younger employees, in similar job positions, after similar

physical altercations.

First, Jewel argues that Straub did not meet its legitimate work expectations. After all,

Straub physically grappled with Gioiosa. Pushing a coworker violated Jewel's "Threats and

Violence-Free Workplace Policy." "Any Employee who, for any reason, says or does something

to threaten another individual's safety will be subject to disciplinary action up to and including

termination." *See* Jewel Statement of Facts, at ¶ 7 (Dckt. No. 89) (quoting Jewel App. Exs., at

31 of 70 (Dckt. No. 90)). Straub pushed Gioiosa in violation of company policy. Therefore,

Jewel argues, he failed to meet the company's legitimate expectations. The Court agrees.

True, there is a genuine issue of material fact about who was the aggressor in the produce

department. A reasonable jury could believe Straub's version of the events. Straub says he

wasn't fighting, but "was battered twice with a large metal cart at which time Straub simply

pushed Michael [Gioiosa] away." *See* Straub Statement of Additional Facts, at ¶ 6 (Dckt. No.

105); Straub Resp., at ¶¶ 13, 21, 23–24 (Dckt. No. 103). As Straub tells it, he didn't intend to

threaten Gioiosa's safety. He was merely trying to protect himself.

Even so, there is no disputed question of fact about whether Straub *pushed* Gioiosa.

Jewel offers evidence that Straub pushed him. *See* Jewel Statement of Facts, at ¶¶ 18–19, 21,

23–24 (Dckt. No. 89). And Straub admits it, too. *See* Straub Resp., at ¶ 21 (Dckt. No. 103)

("Plaintiff agrees with this statement but clarifies that he only pushed Mr. Gioiosa after the

second painful ramming of the metal cart into his leg."); *id.* at ¶ 23 (identical response); *id.* at ¶ 18 (failing to dispute witness's account that "Plaintiff put his hands on Mr. Gioiosa, causing him to fall back"); *id.* at ¶ 19 (failing to dispute Gioiosa's account that "Plaintiff shoved [Gioiosa] with both hands"); *see also* Straub Statement of Additional Facts, at ¶ 6 (Dckt. No. 105) ("Straub was battered twice with a large metal cart at which time Straub simply pushed Michael . [sic] away."). Straub claims that the shove was justified because it was in self-defense. But Jewel's point is that Straub's push was a fireable offense, *regardless of who started the fight*. *See* Jewel Statement of Facts, at ¶ 25 (Dckt. No. 89).

There is a question of fact about what provoked the shove. But there is no question of fact about whether Straub shoved another employee. He did, as even Straub admits. There is no genuine issue of fact that Straub failed to meet Jewel's legitimate expectations because he indisputably laid hands on another employee.

Second, Jewel argues that there is no evidence that it treated younger, similarly situated employees more favorably. This Court agrees. There is no evidence in the record of a younger employee working under the same supervisor as Straub and who kept his job after a similar physical altercation.

A similarly situated employee – otherwise known as a "comparator" – "need not be identical in every conceivable way," but "must be directly comparable to the plaintiff in all material respects." *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 723 (7th Cir. 2018) (cleaned up). "Although the number of relevant factors depends on the context of the case . . . in the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's

treatment of them." *Id.* (cleaned up). By limiting comparators to only those employees with the same relevant factors as the plaintiff, the Court can "eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable—discriminatory animus." *Id.* (cleaned up).

The Court does not require "nearly identical comparators." *See Coleman v. Donahoe*, 667 F.3d 835, 851–52 (7th Cir. 2012). The mere fact that a plaintiff and comparator had different job titles or roles is not dispositive. The question is "whether the employer subjected them to different employment policies." *Id.* at 848 (cleaned up); *see also id.* at 849–50 (holding that a comparator's position or rank is only important if "the employer took these factors into account when making the personnel decision in question") (cleaned up). In a case involving termination for violating a company policy, a comparator need not have violated the same rule in the same way, but the comparator must have engaged in "comparably serious" conduct. *See id.* at 859.

Straub did not expressly identify any comparators in his opposition to Jewel's motion. *See* Straub Mem. (Dckt. No. 104). But it appears from Jewel's briefs and the parties' Rule 56.1 statements that there are two potential comparators: (1) Jewel Bake Shop Manager Robert "Max" Johnson, and (2) Jewel Store Director Jim Fanella. *See* Jewel Mem., at 11 (Dckt. No. 88); *see also* Jewel Statement of Facts, at ¶¶ 43–55 (Dckt. No. 89) (identifying Johnson, as well as Gioiosa as a potential comparator); Jewel Resp., at ¶ 22 (Dckt. No. 111) (identifying Johnson); *id.* at ¶ 23 (identifying Fanella).

Johnson (the Bake Shop Manager) is not similarly situated to be Straub's comparator. True, at first blush, Johnson appears to fit the bill. Johnson is younger (39 years old), he was involved in a physical altercation at the same Jewel store, and he ultimately kept his job. *See*

Jewel Statement of Facts, at ¶¶ 47–55 (Dckt. No. 89). They did have different roles: Johnson was a manager in the Bake Shop, not a facer like Straub. *See id.* at ¶ 47. But Jewel provides no evidence that Johnson was not subject to the same anti-violence policies that applied to Straub. If anything, Jewel likely would have been stricter with a manager when it comes to a violent altercation, given the example that managers must set for the rank-and-file employees. So the difference in roles is not material. *See Coleman*, 667 F.3d at 848. And there is no evidence that Johnson was subject to a different decision-maker than Straub. Indeed, Jewel notes that Johnson's altercation was investigated by the same Jewel employee who investigated Straub's altercation. *See* Jewel Statement of Facts, at ¶¶ 15, 49 (Dckt. No. 89). So the Court may reasonably infer that Johnson was subject to the same decision-maker as Straub – Jewel Store Director Fanella.

The key difference, however, is that Johnson did not commit a "comparably serious violation." *Coleman*, 667 F.3d at 859. Johnson's physical altercation was strikingly different from Straub's. Completely unbeknownst to Johnson, one of the Jewel Bake Shop employees told her boyfriend to stop calling her at the store, or else Johnson would hurt him. *See* Jewel Statement of Facts, at ¶¶ 50–51 (Dckt. No. 89). The boyfriend came into the store and confronted Johnson. *Id.* at ¶ 52. The boyfriend started shouting at Johnson, and then tried to punch him; Johnson ducked. *Id.* Then the boyfriend tackled Johnson. *Id.* The police arrived and investigated, but Johnson chose not to press charges. *Id.* at ¶ 53. After conducting its own investigation, Jewel did not discipline Johnson for the altercation. *See id.* at ¶¶ 49, 54. But Jewel did fire the Bake Shop clerk, finding that she had violated its anti-violence policy by goading and provoking her boyfriend, thereby threatening Johnson's safety. *See* Jewel App.

34

Exs., at 69 of 70, ¶ 15 (Dckt. No. 90). Of note, the fired clerk was 26 years old. *Id.* at 69 of 70, ¶ 16.

In sum, Johnson was attacked by a customer and did nothing but duck a punch and then get tackled. He didn't punch back. And he didn't even push his attacker, either. He was purely an attackee. Straub's altercation was materially different. Straub admits that he pushed Gioiosa. *See* Straub Resp., at ¶¶ 13, 18–19, 21, 23 (Dckt. No. 103). The undisputed evidence also shows that it was not a strong-arm, football-style move intended only to keep Gioiosa and his metal cart at a safe distance. Instead, Straub pushed Gioiosa with both hands, causing Gioiosa to fall back. *See id.* at ¶¶ 18–19.

Johnson did not threaten anyone's safety. Straub did. Given that Straub admitted to shoving Gioiosa with both hands, no reasonable jury could find that Johnson committed a comparably serious violation of Jewel's anti-violence policy by ducking a punch and then getting tackled. *See Phillips v. Spencer*, 793 F. App'x 435, 439 (7th Cir. 2019) (holding that comparator was not similarly situated where plaintiff, a Navy police officer, clocked out of his shift early and left the base, making himself completely unavailable, whereas comparator was caught waiting out his shift in his patrol car on the base, meaning he could have responded to a burglar alarm); *Watkins v. Riverside Med. Ctr.*, 758 F. App'x 547, 550–51 (7th Cir. 2019) (holding that comparator was not similarly situated where employer's investigation of plaintiff "disclosed numerous instances of abuse and error over a period of years," whereas employer's investigation into purported comparator for single instance actually showed "that she had accidentally hit a resident's wheelchair against the door" and "had not abused the resident"); *Young v. Brennan*, 754 F. App'x 423, 425–26 (7th Cir. 2018) (holding that comparator was not similarly situated where plaintiff manually entered subordinates' time cards to authorize payment for work not

done, whereas comparator manually inputted a time card entry to close out a subordinate's shift and disallow overtime), *cert. denied*, 139 S. Ct. 2032 (2019); *Williams v. Office of Chief Judge of Cook Cty. Illinois*, 839 F.3d 617, 626–27 (7th Cir. 2016) (holding that comparator was not similarly situated where plaintiff failed to communicate with the human resources department about her expected return-to-work date after a medical leave, whereas comparator repeatedly contacted human resources during her leave "to keep her abreast of her extension requests").

The other potential comparator, Jim Fanella, does not fit the role either. Straub says that he "learned and confirmed that Jim Fanella was in an altercation at another Jewel location and Jim Fanella was not fired." *See* Straub Statement of Additional Facts, at ¶ 23 (Dckt. No. 105). Straub does not provide any more details about Fanella's altercation, and provides no admissible evidence to support the fact of a Fanella altercation, as Jewel points out in disputing the fact. *Id.*; *see also* Jewel Resp., at ¶ 23 (Dckt. No. 23). Straub has no personal knowledge – he reported what he "learned" – and he doesn't present any admissible evidence, either.

Even if Straub had presented evidence of Fanella's altercation, the Court could not have considered him as a valid comparator. First, Fanella is in the same protected class as Straub – he is 51 years old. *See* Jewel Statement of Facts, at ¶ 28 (Dckt. No. 89). He can't be a comparator because he is not outside Straub's protected class. *See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (fourth element of *McDonnell Douglas* framework requires a plaintiff to identify "similarly situated employees who were *not members of [plaintiff's] protected class*") (emphasis added). Second, as a store director, Fanella was not subject to the same supervising decision-maker as Straub. *See* Jewel Statement of Facts, at ¶ 16 (Dckt. No. 89). In fact, Fanella was Straub's supervisor, *see, e.g.*, Jewel Resp., at ¶ 11 (Dckt. No. 111), and was the person who fired Straub, *see* Jewel Statement of Facts, at ¶ 25 (Dckt. No.

36

89). Although there is no evidence in the record about who supervised Fanella, it is unreasonable to infer that Fanella would have been in charge of investigating and disciplining himself. Employees cannot be similarly situated if they were not subject to the same decision-maker. *See Howard v. Indianapolis Pub. Sch.*, 727 F. App'x 198, 201–02 (7th Cir. 2018); *Mourning v. Ternes Packaging, Indiana, Inc.*, 868 F.3d 568, 571 (7th Cir. 2017); *see also Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009) (holding that supervisors are ordinarily not similarly situated to their subordinates) (citation omitted). Third, Straub presents no evidence about the facts surrounding Fanella's altercation, so the Court cannot say whether there were "differentiating or mitigating circumstances as would distinguish [Fanella's] conduct or [Jewel's] treatment of [him]." *See Skiba*, 884 F.3d at 723.

Johnson and Fanella are not similarly situated to Straub. There is no evidence to support Straub's claim that Jewel treated younger, similarly situated employees more favorably. Straub also was not meeting Jewel's legitimate work expectations. Straub has failed to meet his evidentiary burden under *McDonnell Douglas* to support these two elements of his *prima facie* case. Straub therefore has failed under *McDonnell Douglas* to meet his burden in opposing summary judgment on his discriminatory termination claim.

### b. Legitimate, Nondiscriminatory Reason and Pretext

Even if Straub had shown a genuine dispute of material fact over his *prima facie* case, Jewel would still prevail under the *McDonnell Douglas* framework. Jewel articulated a legitimate, nondiscriminatory reason for firing Straub: his physical altercation with Gioiosa. And Straub has presented no evidence that this reason was pretextual.

If a plaintiff makes out a *prima facie* case of discrimination, *McDonnell Douglas* shifts the burden to the defendant to offer a "legitimate, nondiscriminatory reason" for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802. The defendant meets this burden

by supporting its legitimate, nondiscriminatory reason with enough admissible evidence to "raise[] a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Jewel provided a legitimate, nondiscriminatory reason for firing Straub: he got into a physical altercation with another employee, and shoved him. Straub violated Jewel's policies against workplace violence. *See* Jewel Statement of Facts, at ¶ 25 (Dckt. No. 89). The Seventh Circuit has held that shoving a fellow employee while on the job is a legitimate, nondiscriminatory reason to be fired. *See Mora v. Chicago Tribune Co.*, 2000 WL 491689, at *1, *3 (7th Cir. 2000) ("Assault is a legitimate, nondiscriminatory reason for firing" an employee who grabbed and shoved another employee.) (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)); *see also Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1002–03, 1012 n.12 (7th Cir. 1999) (holding that employer had a legitimate, nondiscriminatory reason to terminate plaintiff for fighting, despite fact that plaintiff was attacked by a fellow coworker swinging a 4-by-4 block of wood, and plaintiff used his hand and then a steel bar to parry those attacks); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 283, 285–87 (7th Cir. 1997) (same, where plaintiff slapped a coworker).

The burden accordingly shifts back to Straub to show that Jewel's proffered reason for firing him was merely a pretext, and that Jewel really fired him because he was old. *See McDonnell Douglas*, 411 U.S. at 804. To show pretext, a plaintiff must come forward with evidence that "(a) the employer's nondiscriminatory reason was dishonest; and (b) the employer's true reason was based on a discriminatory intent." *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007). The law punishes discriminatory motives, not bad or bungled business decisions. "It is not the court's concern that an employer may be wrong about its employee's

performance, or may be too hard on its employee." *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012). "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "[T]he only question is whether the employer's proffered reason . . . was a lie." *Coleman*, 667 F.3d at 852.

Showing pretext does not require a smoking gun, but the plaintiff must do more than argue he shouldn't have been fired. *See O'Leary*, 657 F.3d at 635 ("Where, as here, the employer contends that the plaintiff's job performance was wanting, the plaintiff must do more than dispute the validity of the employer's criticisms."); *Russell v. Acme–Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995) (holding that plaintiff's own opinion that his performance was adequate did not create a genuine factual dispute over whether the defendant-employer's performance criticisms were pretextual). The plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in the defendant's offered reason that a reasonable person could disbelieve it was the real reason. *Coleman*, 667 F.3d at 852.

Straub must show that a reasonable jury could disbelieve that Jewel fired him because he got into a pushing match with a fellow employee in the store (in front of a customer, no less). And Straub must "provide evidence of at least an inference that the *real* reason . . . was discriminatory." *Perez v. Illinois*, 488 F.3d 773, 778 (7th Cir. 2007) (cleaned up, emphasis added).

Straub offers no reason – much less any supporting evidence – to doubt that Jewel fired him because of his altercation with Gioiosa. Again, fighting is against Jewel policy. "Any Employee who, for any reason, says or does something to threaten another individual's safety will be subject to disciplinary action up to and including termination. Violations of this policy

may result in immediate termination of employment without prior warnings." *See* Jewel Statement of Facts, at ¶ 7 (Dckt. No. 89) (quoting Jewel App. Exs. at 31 of 70 (Dckt. No. 90)). Jewel's "Disciplinary Situations Policy" lists "certain types of conduct that may warrant immediate termination of employment," including "[f]ighting with or threatening, verbally abusing, or harassing other Employees, customers, vendors, etc." *Id.* at ¶ 8 (quoting Jewel App. Exs., at 34 of 70 (Dckt. No. 90)). Straub pushed a fellow employee, and thus committed a violent act. Even if Gioiosa was the instigator, Straub threatened Gioiosa's safety by shoving him, which is against Jewel policy. He didn't de-escalate the situation. He increased the level of violence by laying hands on another employee.

Straub "admits that Jewel terminated his employment because he was involved in a physical altercation" in violation of Jewel's Threats and Violence-Free Workplace Policy and Disciplinary Situations Policy, but Straub asserts that "it is the pretextual reason Jewel used for his termination." *See* Straub Resp., at ¶¶ 25–26 (Dckt. No. 103); *see also id.* at ¶ 7. Straub asserts that "Jewel selectively uses [its Disciplinary Situations] policy." *Id.* at ¶ 8. But mere assertions are not enough at the summary judgment stage. Straub provides no evidence of how Jewel "selectively use[d]" the policy to fire him, or "selectively uses" the policy in general.

Jewel has provided evidence that it terminated Straub for violating its anti-violence policy. And Straub has provided no evidence that Jewel's reason for the firing was a lie. Straub provided no evidence, for example, that Jewel's purported reason for firing Straub was nonsensical or baseless. *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 806 (7th Cir. 2017) ("He also submitted unusually detailed evidence—including testimony, interrogatory answers, relevant gas receipts, scheduling records, prisoner transport records, the Sheriff's standard operating procedures, and much more—to show that the supposed reasons for firing

him were not only wrong but so baseless as to support an inference of pretext, meaning dishonesty.").

Straub did not offer any other evidence to support an inference that Jewel terminated him because of his age.  For example, in *Rowlands*, the Seventh Circuit considered a discrimination claim by an employee who was fired for violating an anti-violence policy.  *See Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792 (7th Cir. 2018).  The Seventh Circuit pointed to circumstantial evidence that the proffered reason was not the real reason, including:

> (1) her employee ID was never reinstated; (2) she was "put under a microscope" and subjected to new rules that applied only to her; (3) she attempted to discuss her limitations with [her supervisor], but was rebuffed repeatedly; (4) [her supervisor] complained that she "has been a constant pain in my butt" and "that management has been on me continually about this"; (5) she alone was prohibited from moving her car closer to the building during her breaks; (6) she was denied access to the first-floor bathroom; and (7) [Rowlands' coworker] violated the [anti-violence] Policy by threatening [the union representative] in front of [her supervisor], and suffered no adverse action as a result.

*Id.* at 802–03.  Straub has presented nothing like the evidence presented by the plaintiff in *Rowlands*.

At best, Straub argues that he shouldn't have been fired.  But terminating Straub was a business judgment, and mere errors in business judgment do not show pretext.  *See Coleman*, 667 F.3d at 852; *O'Leary*, 657 F.3d at 635; *Seymour-Reed v. Forest Pres. Dist. of DuPage Cty.*, 752 F. App'x 331, 335 (7th Cir. 2018) ("[A] pretext analysis evaluates the honesty of the employer's explanation, not its validity or reasonableness."); *see also Woods v. Perry Cty.*, 65 F. App'x 63, 70 (7th Cir. 2003) (holding that the sheriff's department had an adequate, non-pretexutal basis for firing plaintiff when he broke rules and disobeyed a superior's direct order, even if plaintiff had a "worthy reason" for breaking the rules).  Straub must show that Jewel's

41

representation that it fired him for violating the anti-violence policy "was a lie." *Coleman*, 667 F.3d at 852.

Straub's main theory of pretext appears to be that Jewel failed to act quickly enough to discipline him after the altercation, according to Jewel's own procedural discipline polices. *See* Straub Statement of Additional Facts, at ¶ 10–17 (Dckt. No. 105). Straub argues that the delay in issuing the disciplinary paperwork somehow (although he doesn't explain how) shows pretext.

Understanding Straub's argument requires a brief tour of the timeline surrounding his termination. The altercation took place on December 10, 2016. *Id.* at ¶ 6. When Straub reported to work two days later, Jewel apparently didn't confront him about the incident (although Jewel disputes this assertion as unsupported). *Id.* at ¶ 10; *see also* Jewel Resp., at ¶ 10 (Dckt. No. 111). It wasn't until December 13, 2016 that Fanella told Straub he was suspended. *See* Straub Statement of Additional Facts, at ¶ 11 (Dckt. No. 105). Straub says he never received the Associate Corrective Action Review form, dated December 26, 2016, that documented his termination. *Id.* at ¶¶ 13, 17.

Straub asserts that the delay in issuing the Associate Corrective Action Review form somehow meant that it wasn't valid, although he never explains why, or offers any supporting evidence. "In order for an Associate Corrective Action Review to be issued, it must be on the next scheduled work day when a non-union member is present. If a non-union member is present and the Associate Corrective Action Review is not issued, then it cannot be issued." *Id.* at ¶ 15. Although Straub does not explicitly say so in his Rule 56.1 statement, he implies that December 12 was his "next scheduled work day" after the Gioiosa incident. *Id.* at ¶¶ 15–17. And on December 12, "non-union member Bob, Assistant Store Manager [sic]" was "in the offices." *Id.* at ¶ 16. Straub then applies some syllogistic logic. "If Jewel wanted to issue this

42

Action Review [sic] to Straub, it needed to be issued on December 12, 2016. This in of itself [sic] is enough proof of pretext and reason to deny Defendant's Motion for Summary Judgment." *Id.* at ¶ 17.

Straub essentially argues that he wasn't fired fast enough. But he doesn't explain why the lack of an immediate termination means that the justification was pretextual. There is no evidence that something nefarious happened during the delay. Jewel's procedural timelines for issuing disciplinary forms are not at issue. No reasonable jury could find that this delay showed that Jewel didn't really fire Straub because of his altercation. And in any event, Jewel suspended him only three days after the altercation, and thus took it seriously from the get-go.

Even if Straub could show some evidence that Jewel didn't really fire him for pushing Gioiosa, Straub would need to show that the real reason Jewel fired him was because he was over 40 years old. *See Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007). Straub offers no evidence that the facts surrounding his firing show that age discrimination was the real reason.

After reviewing the record, it appears that the best evidence Straub could point to is a July 2015 interaction with Store Director Jim Fanella. Fanella approached Straub as he was working in the store and asked him how old he was, then repeated the question when Straub didn't answer. *See* Straub Statement of Additional Facts, at ¶ 3 (Dckt. No. 105); Straub App. Exs., at 5 of 24 (Dckt. No. 106). Even assuming that Fanella was harping on Straub's age, this single interaction is too attenuated and insubstantial for a reasonable jury to find that Fanella – who is also over 40 years old – harbored strong discriminatory feelings against people over 40. That passing comment took place in the summer of 2015, a year and a half before the altercation in December 2016. "[S]tray remarks do not support an inference of discrimination unless the decisionmaker or someone with influence over the decision made the comment around the time

43

of, or about, the adverse action." *Seymour-Reed v. Forest Pres. Dist. of DuPage Cty.*, 752 F. App'x 331, 335 (7th Cir. 2018) (cleaned up); *see also Lloyd v. Mayor of City of Peru*, 761 F. App'x 608, 611 (7th Cir. 2019).

Straub therefore failed to show that Jewel's legitimate, nondiscriminatory reason for firing him was merely a pretext for age discrimination. Under the *McDonnell Douglas* burden-shifting framework, Straub has not met his burden to oppose Jewel's summary judgment motion on his discriminatory termination claim.

### C.     *Ortiz* – Evidence, Taken as a Whole

Consistent with the Seventh Circuit's opinion in *Ortiz*, the Court also considers, apart from the *McDonnell Douglas* burden-shifting framework, "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the discharge." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019).

Before *Ortiz*, courts in this District often distinguished between "direct" and "indirect" methods of analyzing discrimination claims. *See Ortiz*, 834 F.3d at 763–66. The *McDonnell Douglas* burden-shifting framework often fell under the "indirect" method. *Id.* at 766. Without disapproving of the *McDonnell Douglas* framework, *Ortiz* explained that courts must get back to basics. "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence." *Id.* at 765.

Considering the evidence as a whole, no reasonable factfinder could conclude that Jewel fired Straub because of his age. Straub presents no evidence connecting his firing with his age. Gioiosa didn't impugn his age during their altercation. And none of the Jewel managers referred

to Straub's age during the ensuring suspension, investigation, or firing. Of course, some discriminators do not announce their biases out loud (although some do). But Straub fails to offer any evidence that would allow a reasonable factfinder to infer that age discrimination was Jewel's true, unstated motivation for firing him.

Indeed, even though Straub has canvassed events from his employment history at Jewel dating back to 2010, he presents evidence of only two incidents in which anyone even referred to his age. The first is when Store Director Fanella harangued Straub about his performance in July 2015, asking him repeatedly "how old are you"? *See* Straub App. Exs., at 5 of 24 (Dckt. No. 106). The second happened in January 2016, when Assistant Manager "Jeremy" told Straub that, despite his knee troubles, he needed to finish facing all of the products on his assigned aisles because there are "16 & 17 year olds that can do the job." *Id.* at 18 of 24.

As discussed above, the incident with Fanella occurred a year and a half before Fanella fired Straub in December 2016. And the incident with Jeremy happened just shy of a year before the firing. Straub provides no reason to think that these passing statements, so remote from his termination, expose the real reason he was shown the door.

What happened just before Straub was fired? He got into a shoving match with a coworker in the produce section. Fights are against Jewel policy. And after an investigation, Jewel fired both Straub and Gioiosa. Straub has not provided evidence to permit a reasonable jury to conclude that the altercation wasn't the real reason.

Straub may feel that he shouldn't have been fired. And he may be right – the Court expresses no opinion. Whether Jewel was wise to fire Straub is not at issue in this case. "[T]his court does not sit as a super-personnel department that reexamines an entity's business decisions." *Pagel v. TIN Inc.*, 695 F.3d 622, 630 (7th Cir. 2012) (cleaned up); *see also Coleman*

*v. Donahoe*, 667 F.3d 835, 862 (7th Cir. 2012); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 638 (7th Cir. 2011). The only question is whether Jewel fired Straub for discriminatory reasons – specifically, because of Straub's age. Jewel has shown there is no genuine dispute of material fact about whether it discriminated against Straub, and so it deserves summary judgment on Straub's termination claim.

### Conclusion

Jewel's Motion for Summary Judgment is granted. The Court will enter final judgment for Jewel on all remaining claims.

Date: April 20, 2020

_____
Steven C. Seeger
United States District Judge